UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

TRICIA MCFEE,

                              Plaintiff,                        **MEMORANDUM & ORDER**
                                                           21-CV-3087 (MKB)

           v.

BJ'S WHOLESALE CLUB, INC.,

                              Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Tricia McFee commenced the above-captioned action against Defendant BJ's

Wholesale Club, Inc. ("BJ's") in the Supreme Court of the State of New York, Kings County, on

January 5, 2021, asserting a claim of negligence under New York law based on a slip-and-fall

accident that occurred on August 20, 2020 while Plaintiff was at a BJ's club in Brooklyn, New

York. (Notice of Removal ¶¶ 1–3, Docket Entry No. 1; Verified Compl. ¶¶ 5–27, annexed to

Notice of Removal as Ex. A, Docket Entry No. 1-2.) On June 1, 2021, Defendant removed the

action to the Eastern District of New York based on diversity jurisdiction under 28 U.S.C. §

1332. (Notice of Removal ¶ 5.)

        On December 16, 2024, Defendant moved to exclude Plaintiff's expert testimony and for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Plaintiff

opposed the motions.[1] For the reasons set forth below, the Court grants in part and denies in part

Defendant's motion to exclude Plaintiff's expert testimony and grants Defendant's motion for

summary judgment on Plaintiff's negligence claim.

---

[1] (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 30-19;
Pl.'s Mem. in Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 31-13; Def.'s Reply in
Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 32.)

## I.  Background

The following facts are undisputed unless otherwise noted.[2]

### a.  Customer safety protocol at BJ's

Plaintiff alleges she was injured in a BJ's club located at 900 Remsen Avenue, Brooklyn, New York due to a slip-and-fall in the bottled water display area (the "Water Section").  (Pl.'s 56.1 Resp. ¶¶ 2, 10, 38; Def.'s 56.1 Resp. ¶ 4.)  The Water Section consisted of two different brands of water, which arrived on pallets and were displayed separately: Wellsley Farms and Poland Spring.  (Pl.'s 56.1 Resp. ¶¶ 56, 75, 77.)  Employees inspected the packaged water pallets once they arrived at BJ's to ensure the product was not damaged and placed the pallets on the sales floor "the same way they c[a]me in."[3]  "BJ's employees moved the pre-stacked pallets of water onto the sales floor on an overnight basis before the accident when the [c]lub was closed for business to customers."[4]  (Pl.'s 56.1 Resp. ¶ 115; Nesbitt Tr. 28:15–29:13; Tracey Tr. 47:9– 49:6.)  According to Karen Nesbitt,[5] a Bakery Manager at Defendant's Remsen Avenue location

---

[2]  (Def.'s 56.1 Stmt. ("Def.'s 56.1"), Docket Entry No. 30-1; Pl.'s 56.1 Counterstmt. ("Pl.'s 56.1"), Docket Entry No. 31-1; Pl.'s Resp. to Def.'s 56.1 ("Pl.'s 56.1 Resp."), Docket Entry No. 31-2; Def.'s Resp. to Pl.'s 56.1 ("Def.'s 56.1 Resp."), Docket Entry No. 32-1.)

[3]  (Pl.'s 56.1 Resp. ¶¶ 75–76; Dep. Tr. of Karen Nesbitt ("Nesbitt Tr.") 30:4–7, annexed to Aff. of J. Daniel Velez ("Velez Aff.") as Ex. J, Docket Entry No. 30-11.); Dep. Tr. of Tristan Tracey ("Tracey Tr.") 45:2–46:3, annexed to Velez Aff. as Ex. L, Docket Entry No. 30-13.)

[4]  According to Tracey, BJ's "d[id not] stack the waters" and the water "c[a]me off a truck" on pallets.  (Tracey Tr. 45:12–46:3; see also Nesbitt Tr. 30:4–7, 30:17–21 (explaining that the water "come[s] in on pallets and that's how they go out" and that BJ's "wouldn't restock all those pallets of water").)  The water is packed out to the sales floor every night between approximately 8:00 P.M. and 11:00 P.M.  (Tracey Tr. 46:4–48:7, 48:15–49:15.)

[5]  Throughout Plaintiff's 56.1 Response, she admits certain facts in Defendant's 56.1 Statement "to the extent that th[e] testimony was elicited" from herself, Nesbitt, Shannon Ward Lyons Oliver, and Tristan Tracey.  (See, e.g., Pl.'s 56.1 Resp. ¶¶ 4, 11, 72, 104.)  Unless otherwise disputed or contradicted by the record, the Court considers these facts uncontested. See Blue Castle (Cayman) Ltd. v. Miller, 772 F. Supp. 3d 416, 421 n.2 (S.D.N.Y. 2025) ("Responses of this nature, which do not point to any evidence in the record that may create a

at the time of Plaintiff's accident, "[i]f [she] saw a pallet that was damaged," she would report it.[6]  (Nesbitt Tr. 32:18–23.)

Nesbitt also testified that BJ's provides annual training to its employees regarding how to handle accidents, and Tristan Tracey, a Perishables Manager at Defendant's Remsen Avenue location at the time of Plaintiff's accident, testified that BJ's trains all employees regarding how to respond to spills.  (Nesbitt Tr. 9:8–15, 13:11–14:10; Tracey Tr. 19:25–20:8; Pl.'s 56.1 Resp. ¶ 72.)  In the event of a spill, employees were expected to "block off the area immediately," stay on the scene, and clean up the spill themselves or call another employee for assistance for large spills.  (Nesbitt Tr. 11:2–6, 14:11–15:7; Tracey Tr. 19:25–20:17, 90:13–21; Pl.'s 56.1 Resp. ¶¶ 82–83.)  Every hour, managers from all of BJ's departments would walk through the club to ensure it was safe and "constantly monitor[ed] areas" within their departments.  (Nesbitt Tr. 26:9–27:12.)  Employees in BJ's maintenance department and other BJ's employees also "constantly walk[ed] around the [c]lub" to ensure floors were safe for BJ's employees and

---

genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact." (quoting *Johnson v. City of New York*, No. 15-CV-6915, 2019 WL 294796, at *10 n.8 (S.D.N.Y. Jan. 23, 2019))); *McCarthy v. Motorola Sols. Inc.*, No. 21-CV-4020, 2024 WL 3965950, at *1 (E.D.N.Y. Aug. 28, 2024) ("Likewise, 'responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact.'" (quoting *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014))); *Cui v. Fed. Bureau of Investigation*, 551 F. Supp. 3d 4, 15 (E.D.N.Y. 2021) ("Generally, plaintiff['s] failure to respond or contest the facts set forth by the defendants in their . . . 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (alterations in original) (internal quotation marks omitted) (quoting *Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2020 WL 4587533, at *2 n.3 (E.D.N.Y. Apr. 21, 2020))); *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 545 n.1 (E.D.N.Y. 2015) ("Generally, a party's failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." (internal quotation marks omitted) (quoting *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003))).

[6] Plaintiff denies this statement "to the extent that Ms. Nesbitt did not inspect the water pallets directly but would report any damages pallets" and notes that Nesbitt's "checks were not logged by [her]."  (Pl.'s 56.1 Resp. ¶ 73.)

customers.[7]  (*Id.* at 18:9–14; Pl.'s 56.1 Resp. ¶ 85.)  As Bakery Manager, Nesbitt walked through the club once an hour and monitored the area of the floor near the Water Section, which was located at the rear of the club and closest to the Bakery Department.  (Nesbitt Tr. 24:10–16, 25:11–14; Pl.'s 56.1 Resp. ¶¶ 10, 73; Def.'s 56.1 Resp. ¶ 59.)  Nesbitt did not keep a log of her walkthroughs.  (Nesbitt Tr. 27:16–28:3.)  As Perishables Manager, Tracey performed a walkthrough of the bakery and several other areas every thirty minutes to ensure "products were properly displayed" and "kept an eye out" for slipping and tripping hazards, including product breakages.[8]  (Def.'s 56.1. ¶¶ 118–19; Pl.'s 56.1 Resp. ¶¶ 118–19.)  Tracey did not recall whether BJ's kept a log of walkthroughs in or around August 20, 2020.  (Tracey Tr. 27:16–29:6.)

### b.  August 20, 2020 accident

On August 20, 2020, at approximately 12:30 P.M., Plaintiff visited Defendant's Remsen Avenue location with her cousin, Shannon Ward Lyons Oliver ("Ward"), to buy groceries.[9] Plaintiff grabbed a shopping cart for their purchases upon entering the club.  (Pl.'s 56.1 Resp. ¶ 6.)  Plaintiff was wearing a green dress, a jean jacket and green slide-style slippers.  (*Id.* ¶ 39; Def.'s 56.1 Resp. ¶ 16.)  Plaintiff and Ward were in BJ's for approximately twenty minutes prior

---

[7]  Plaintiff notes that "documented inspections [were] not made."  (Pl.'s 56.1 Resp. ¶ 84.) According to Tracey and Nesbitt, maintenance team members and other employees are "constantly" monitoring the store to address customer safety concerns.  (Tracey Tr. 33:5–18 (stating that maintenance team members are "constantly on the sales floor" to ensure customers safety); Nesbitt Tr. 17:20–25 (stating that maintenance members "constantly monitor[ed] the floors like the rest of [the employees]").)

[8]  Plaintiff denies this to the extent that "no particular logs were maintained for cleaning or hazard inspection in August [of] 2020."  (Pl.'s 56.1 Resp. ¶ 118.)  According to Tracey, he inspected "[his] personal departments every thirty minutes," including spills "if [he] notice[d] a spill."  (Tracey Tr. 31:8–32:17.)

[9]  (Handwritten Stmt. of Shannon Ward Lyons Oliver ("Ward Stmt."), annexed to Velez Aff. as Ex. I, Docket Entry No. 30-10; Dep. of Tricia McFee ("McFee Tr.") 16:17–20, 16:25–17:9, annexed to Velez Aff. as Ex. D, Docket Entry No. 30-5; Pl.'s 56.1 Resp. ¶ 4; Def.'s 56.1 Resp. ¶ 3.)

to Plaintiff's accident.  (Pl.'s 56.1 Resp. ¶ 9; McFee Tr. 21:24–22:2, 23:9–13.)  Immediately

prior to walking toward the accident location, Plaintiff was looking at products in Defendant's

Bakery Department.  (Pl.'s 56.1 Resp. ¶ 12; McFee Tr. 21:24–22:2.)  While in the Bakery

Department, Plaintiff did not see any liquid or water on the floor of the accident location.  (Pl.'s

56.1 Resp. ¶ 14.)  Ward also did not observe any liquid or water on the floor in the Water Section

prior to Plaintiff's fall.  (*Id.* ¶¶ 16–22.)  Neither Plaintiff nor Ward recall observing anyone

handling products of any kind in the Water Section or "anything out of the ordinary" prior to

Plaintiff's accident.  (*Id.* ¶¶ 34, 42.)

At approximately 1:04 P.M., Ward pushed the shopping cart toward the Water Section.

(*Id.* ¶¶ 15–16; Video 1:04:01–1:04:14.)  Ward took a package of water from the bottled water

display, placed the package in the cart, and again walked toward the bottled water display.[10]

(Pl.'s 56.1 Resp. ¶¶ 17–19; Def.'s 56.1 Resp. ¶¶ 104–05; Video 1:04:15–1:04:50.)  Plaintiff

approached the cart, and Ward returned from the Water Section and had a brief conversation

with Plaintiff.  (Pl.'s 56.1 Resp. ¶ 21; Def.'s 56.1 Resp. ¶ 105; Video 1:04:39–1:05:00.)  Plaintiff

then walked away from Ward and their shared cart.  (Video 1:05:00–1:05:04.)

According to the Member Incident Report, Plaintiff subsequently slipped and fell at

approximately 1:05 P.M. in front of the Poland Springs bottled water display.[11]  (Member

---

[10]  The parties dispute whether the accident occurred immediately after Plaintiff's cousin grabbed the water package.  (Def.'s 56.1 Resp. ¶ 105.)

[11]  The parties dispute at what time Plaintiff's accident occurred.  (Def.'s 56.1 Resp. ¶ 1.) According to Plaintiff, her accident occurred at approximately 9:40 A.M.  (McFee Tr. 15:20–16:12; Pl.'s 56.1 ¶ 1.)  However, according to the Member Incident Report, the accident occurred at approximately 1:05 P.M.  (Member Incident Report 1, annexed to Velez Aff. as Ex. K, Docket Entry No. 30-12 (noting that the accident occurred at 1:04 P.M.); Nesbitt Tr. 25:23–26:4 (noting that the accident occurred around 1:00 P.M.); Pl.'s 56.1 ¶ 78 (stating that a BJ's employee informed Nesbitt around 1:00 P.M. that an accident occurred); *see also* Ward Stmt. (noting that she was shopping at BJ's with Plaintiff at approximately 12:30 P.M. on August 20, 2020).)  In addition, although the Video does not depict Plaintiff's fall, the Video shows Plaintiff walking

Incident Report 1; Nesbitt Tr. 25:23–26:4; *see also* Def.'s 56.1 Resp. ¶¶ 1, 4, 78; Pl.'s 56.1 Resp. ¶ 10.)  At the time of her fall, Plaintiff was walking through the Water Section to get snacks.  (*Id.* ¶ 38.)  The floor where Plaintiff slipped was smooth, gray concrete.  (Def.'s 56.1 Resp. ¶ 106.)  Plaintiff did not look down at the floor when she was walking.  (Pl.'s 56.1 Resp. ¶ 29.)  As Plaintiff stepped forward with her left foot, Plaintiff slipped and fell backward, first hitting her lower back and then hitting the back of her head against the floor.  (*Id.* ¶ 44; Def.'s 56.1 Resp. ¶¶ 17, 19, 34, 45.)  After her fall, Plaintiff noticed "puddles" of water on the floor.  (Pl.'s 56.1 Resp. ¶¶ 46–47.)  The parties dispute whether the water was "dirty brown" or "clear."[12]  (Pl.'s 56.1 ¶¶ 21, 112; Def.'s 56.1 Resp. ¶¶ 21, 112.)  After her fall, Plaintiff did not see any footprints or cart tracks leading in or through the area where she slipped, nor did she or Ward see any debris, fallen, or broken products nearby.  (Pl.'s 56.1 Resp. ¶¶ 51–53.)

On the day of Plaintiff's accident, Nesbitt performed an inspection of the Water Section approximately twenty minutes prior to the accident, and Tracey performed an inspection within thirty minutes before the accident.  (*Id.* ¶¶ 90–91, 150.)  Neither Nesbitt nor Tracey found water on the floor during their inspections.[13]  (*Id.* ¶¶ 90–92, 150.)  Another BJ's employee notified

---

away from Ward and their shared shopping cart near the bottled water display at approximately 1:05 P.M.  (Video 1:05:00–1:05:04.)

[12]  The parties dispute the color of the water in which Plaintiff fell.  (Pl.'s 56.1 ¶¶ 21, 112; Def.'s 56.1 Resp. ¶¶ 21, 112.)  Plaintiff describes the water she slipped on as "dirty" and "brown," (McFee Tr. 42:11–13, 42:25–43:5), but her cousin Ward and the two BJ's employees who responded to the accident describe the water as "clear."  (Ward Stmt.; Ward Tr. 53:14–54:9; Nesbitt Tr. 39:6–9; Tracey Tr. 36:23–37:21; Pl.'s 56.1 Resp. ¶¶ 65, 95, 141.)  In addition, photographs taken after Plaintiff's fall appear to show clear water on the floor.  (Post-Accident Photograph, annexed to Velez Aff. as Ex. G, Docket Entry No. 30-8; Post-Emergency Medical Services Photographs, annexed to Velez Aff. as Ex. H, Docket Entry No. 30-9.)

[13]  Plaintiff denies whether water was found by Nesbitt "to the extent that" Nesbitt did "not log[]" her checks.  (Pl.'s 56.1 ¶¶ 90–91.)  According to Nesbitt, she "was a little shocked" when an employee informed her of Plaintiff's accident in the Water Section because "[she] kn[e]w [she] had done an inspection of that area" recently.  (Nesbitt Tr. 23:11–17, 34:6–9.)

Nesbitt that someone had fallen in the Water Section. (*Id.* ¶ 89.)  Nesbitt subsequently notified Tracey of Plaintiff's accident. (*Id.* ¶ 139.)  Nesbitt arrived and saw Plaintiff on the floor approximately one or two feet away from the bottled water display. (*Id.* ¶ 94.)  The parties dispute whether the water came from the palletized water bottles.[14] (Pl.'s 56.1 ¶ 113; Def.'s 56.1 Resp. ¶ 113.)  Nesbitt observed clear water on the floor near Plaintiff but neither she nor Tracey were able to determine the source of the water. (Pl.'s 56.1 Resp. ¶¶ 94–98.)  Nesbitt blocked off and placed a caution sign in the area after Plaintiff's fall. (*Id.* ¶ 99; Def.'s 56.1 Resp. ¶ 32.)  Nesbitt also "ask[ed] Plaintiff if she was okay" and prepared a Member Incident Report. (Pl.'s 56.1 Resp. ¶¶ 99–100.)  At Plaintiff's request, Tracey called for an ambulance. (*Id.* ¶ 147.)

## II. Discussion

### a. Standards of review

#### i. Rule 702

"The admission of expert testimony is governed primarily by the Federal Rules of Evidence." *United States v. Walker*, No. 18-3506, 2023 WL 3451419, at *1 (2d Cir. May 15, 2023); *see also Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024) (explaining that "Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony," but that "a judge . . . should also be mindful of other applicable rules" (citation omitted)).  Rule 702 of the Federal Rules of Evidence was recently amended, and this new amendment took effect December 1, 2023.  The rule now provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

---

[14] Defendant disputes whether "[t]he liquid came from a stack of water cases" in the Water Section because it "mischaracterizes the deposition testimony of Ward." (Def.'s Resp. ¶ 113.)  Initially, Ward stated that, although she "c[ouldn't] say which package it came from," it was "coming from the stack" of bottled waters. (Ward Tr. 30:12–15.)  Ward later clarified that she "assume[d]" the water "came from the stacks of water because there's no reason why the floor would be wet" and that she "didn't see water actually running out" from the stacks. (*Id.* at 44:21–45:8.)

> opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *Faison-Williams v. United States*, No. 24-1404, 2025 WL 974831, at *3 (2d Cir. Apr. 1, 2025) (quoting Fed. R. Evid. 702). "The district court plays the role of gatekeeper, determining whether the expert's testimony is reliable and relevant." *Faison-Williams*, 2025 WL 974831, at *3 (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002)); *see United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) ("While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper." (alteration in original) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007))); *see also Richardson v. Corr. Med. Care, Inc.*, No. 22-210, 2023 WL 3490904, at *2 (2d Cir. May 17, 2023) (quoting *Williams*, 506 F.3d at 160); *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011) ("The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702." (citations omitted)).

Prior to permitting a person to testify as an expert under Rule 702, the court must make the following findings: (1) the witness is qualified to be an expert; (2) "the opinion is based upon reliable data and methodology"; and (3) the expert's testimony on a particular issue will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (quoting Fed. R. Evid. 702); *see also Bustamante*, 100 F.4th at 427 ("Under this rule, the [d]istrict [c]ourt . . . 'is charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."'" (emphasis and citation omitted)); *United States v. Napout*, 963 F.3d 163, 187–88 (2d Cir. 2020) (explaining that the court is tasked with "ensuring that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993))); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004) (quoting same). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court set forth a list of factors, in addition to the criteria set forth in Rule 702, that bear on the determination of reliability:

> (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation;" and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

*Williams*, 506 F.3d at 160 (quoting *Daubert*, 509 U.S. at 593–94); *see also United States v. Wilbern*, No. 20-3494, 2022 WL 10225144, at *1 (2d Cir. Oct. 18, 2022) (quoting same); *United States v. Morgan*, 675 F. App'x 53, 55 (2d Cir. 2017) (quoting same); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999)) (similar). The *Daubert* inquiry for reliability is a "flexible one" and does not "constitute a definitive checklist or test," *Kumho Tire*, 526 U.S. at 141, 150 (internal quotation marks and citation omitted), and thus, the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case," *United States v. Green*, No. 22-3217, 2024 WL 4488577, at *1 (2d Cir. Oct. 15, 2024), *cert. denied*, 145 S. Ct. 1216 (2025).

The "district court is afforded 'the same broad latitude when it decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination.'" *Id.* at *1 (emphasis omitted) (quoting *Kumho Tire*, 526 U.S. at 142); *see also Kumho Tire*, 526 U.S. at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)). Expert testimony should be excluded if it is "speculative or conjectural." *United States v. Rivera*, No. 22-2780, 2024 WL 2813548, at *3 (2d Cir. June 3, 2024) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)),

*cert. denied*, 145 S. Ct. 1099 (2025); *Jones*, 965 F.3d at 162 (quoting same); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting same).  When an expert's opinion is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 113 (2d Cir. 2023) (quoting *Amorgianos*, 303 F.3d at 266); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (quoting same); *see also Nimely*, 414 F.3d at 396 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (alteration in original) (quoting *Gen. Elec.*, 522 U.S. at 146)).  "Nevertheless, 'in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion.'"  *U.S. Small Bus. Admin. v. Feinsod*, No. 17-CV-3586, 2025 WL 1677409, at *7 (E.D.N.Y. June 13, 2025) (citation omitted); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos*, 303 F.3d at 267) (same); *Adams v. Liberty Mar. Corp.*, 407 F. Supp. 3d 196, 202 (E.D.N.Y. 2019) (same).

### ii.    Rule 56

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)); *see Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (same) (quoting Fed. R. Civ. P. 56(a)).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual

inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." (quoting *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126 (2d Cir. 2013))). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Lara-Grimaldi v. County of Putnam*, 132 F.4th 614, 633 (2d Cir. 2025) (quoting *Porter v. Dartmouth-Hitchcock*, 92 F.4th 129, 147 (2d Cir. 2024)); *see Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (same) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.*; *Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024) ("The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-movant." (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996))). The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; and then citing *Garcia*, 706 F.3d at 127, 129); *see also Capitol Recs.*, 125 F.4th at 418 ("[A] genuine dispute as to a material fact precludes summary judgment 'where the evidence is such that a reasonable jury could decide in the non-movant's favor.'" (quoting *Lucente v. County of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020))).

**b.    Motion to exclude Sterling Anthony's expert report and proposed testimony**

Defendant moves to exclude the entire report and proposed testimony of Sterling

Anthony, Plaintiff's liability expert.[15]  (Def.'s Mem. 15–24.)

**i.    Anthony's background and expert opinion**

Anthony is a certified packaging professional with over fifty years of experience.

(Anthony CV 1, 3.)  Anthony has a bachelor's degree in packaging engineering from Michigan

State University, a master's degree in marketing and finance from Roosevelt University and has

taken doctrinal courses in international marketing and logistics from Michigan State University.

(*Id.* at 2.)  From approximately 1971 to 1982, Anthony worked as a packaging engineer, brand

manager, packaging manger, and logistics coordinator for private entities.  (*Id.* at 1.)  Since 1982,

Anthony has performed independent work as a consultant specializing in marketing, packaging,

logistics, and human factors.  (*Id.*)  In addition, from 1980 to 1985, Anthony served as an

instructor at Michigan State University's School of Packaging, teaching courses in package

design and development, material handling and distribution packaging.  (*Id.*)  Anthony has

published over two hundred articles in various trade journals related to marketing, packaging,

and logistics, and has presented in "dozens" of seminars and conferences in the United States and

abroad.  (*Id.* at 2–3.)  Anthony has testified as a marketing, packaging, and logistics expert in

depositions or at trials at least nineteen times since 2012.  (Anthony Testimonies 1–3.)

Plaintiff retained Anthony to provide his opinions regarding "the causal factors relating to

the slip-and-fall suffered by [Plaintiff]" with "a reasonable degree of professional certainty."

---

[15]  The Court refers to the internal pagination of Sterling Anthony's expert report, curriculum vitae, and prior testimonies, which are all contained in Exhibit 7 of the affidavit of Jason Lesnevec submitted in opposition to Defendant's motion for summary judgment.  (*See* Rep. of Sterling Anthony ("Anthony Rep."), annexed to Def.'s Mot. as Ex. 7, Docket Entry No. 31-9; Curriculum Vitae of Sterling Anthony ("Anthony CV"), annexed to Def.'s Mot. as Ex. 7, Docket Entry No. 31-9; Recent Testimonies of Sterling Anthony ("Anthony Testimonies"), annexed to Def.'s Mot. as Ex. 7, Docket Entry No. 31-9.)

(Anthony Rep. 1.)  In preparing his report, Anthony reviewed the complaint, the bill of particulars, Defendant's answer, Plaintiff's initial disclosures, Plaintiff's responses to the first set of interrogatories and responses to the first set of requests for production, the parties' Rule 26(a) disclosures, the Member Incident Report, the surveillance video, Defendant's policy exhibits, and select deposition transcripts.  (*Id.* at 1–2.)  Anthony's report reflects that he relied on his own experience with the "bottled-water industry, including packaging, bottling, and the supply chain" and three authoritative sources regarding packaging and warnings.  (*Id.*)  In addition, Anthony visited a BJ's club and purchased a case of Wellsley Farms water.  (*Id.* at 2–4.)  Anthony analyzed the wall thickness, height, and weight of an individual, 16.9 fluid ounce bottle of Wellsley Farms' water, as well as the weight of a case of Wellsley Farms water.  (*Id.* at 4.)  Anthony then used those measurements to calculate the weight of a tier of Wellsley Farms water, which consists of eight cases, the weight of a pallet of Wellsley Farms water, which consists of six tiers, and the weight of the top five tiers of Wellsley Farms water on the bottom tier.  (*Id.* at 3–4.)  Anthony states that "[w]hat can be said of Wellsley Farms water can be said of all other competing brands carried by BJ's" because, although the labeling differs across brands, "bottles and caps are interchangeable" and the "weight and density of 16.9 [ounces] of water is a constant."  (*Id.* at 4.)

Based on his analysis of the Wellsley Farms water and his packaging engineering experience, Anthony opined that BJ's knew or should have known that (1) "a slip-and-fall hazard was inherent to its bottled-water section"; (2) "compression is a force that's inherent to palletized bottled water"; (3) "leakage from just one bottle will spread across a wide area of [the] floor"; (4) "it owes a duty to its invitees to maintain its premises in a safe condition, including against the hazard of slip-and-fall[s]"; (5) "scheduled walkthroughs were necessary, but not sufficient, as a safeguard against slip-and-fall[s] in the bottled-water section"; (6) "there are measures that can be taken to reduce the risk of slip-and-fall in the bottled-water section"; and (7) "it owed its

invitees a duty to warn concerning the hazard of slip-and-fall in its bottle-water section."[16] (Anthony Rep. 5–6.)

In his conclusion, Anthony explained that BJ's bottled water section "posed an inherent slip-and-fall hazard" due to "leak[ing] from compression." (*Id.* at 6.) In support, Anthony noted that "compression exerted itself on the palletized load," which "continued unabated" and "caused leakage" that caused Plaintiff to "suffer[] a slip-and-fall." (*Id.*) Anthony also concluded that Plaintiff's actions, such as wearing a certain style of shoe, "did not contribute to her accident" because "her shoes were not in violation" of BJ's dress code and "it can't be definitively argued that a different style of shoes would have prevented her slip-and-fall." (*Id.*)

---

[16] Although the parties do not address whether Anthony's report and proposed testimony contains impermissible legal conclusions in their briefing papers, (*see generally* Def.'s Mem.; Pl.'s Opp'n), the Court notes that several of Anthony's opinions express legal conclusions — including Anthony's opinion that Defendant "knew or should have known" that it "owes a duty to its invitees to maintain its premises in a safe conditions" and "owe[s] its invitees a duty to warn concerning the hazard of slip-and-fall[s] in its bottle[d]-water section" and that the "bottled-water section posed an inherent slip-and-fall hazard" that was "reasonably foreseeable," (*see* Anthony Rep. 5–6). Regardless of underlying expertise, "experts may not testify as to conclusions of law," because "[d]oing so would usurp the role of the court in determining the applicable legal standards." *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012) (first citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); and then citing *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)); *see Bilzerian*, 926 F.2d at 1294 ("As a general rule an expert's testimony on issues of law is inadmissible." (citation omitted)); *In re ACTOS Antitrust Litig.*, No. 13-CV-9244, --- F. Supp. 3d ---, ---, 2025 WL 1001259, at *31 (S.D.N.Y. Mar. 31, 2025) (quoting *Bilzerian*, 926 F.2d at 1294) (same); *see also Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (explaining that the Second Circuit has "consistently held . . . that expert testimony that 'usurp[s] the role of the trial judge in instructing the jury as to the applicable law . . . by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach.'" (first quoting *Bilzerian*, 926 F.2d at 1294; and then quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994))); *Wells Fargo Bank v. U.S. Life Ins. Co. in the City of New York*, No. 22-CV-8606, 2025 WL 2220948, at *23 (S.D.N.Y. Aug. 4, 2025)("[E]xpert testimony may not usurp the province of the judge to instruct on the law . . . ."). Accordingly, the Court does not consider the portions of Anthony's report and proposed testimony that express legal conclusions in addressing Defendant's motion.

### ii.    The Court admits in part and excludes in part Anthony's report and proposed testimony

Defendant argues that the Court should not consider Anthony's report in deciding Defendant's motion for summary judgment and should preclude Anthony's report and testimony at trial because (1) Anthony is unqualified to render a reliable opinion on compression failure, (2) Anthony's conclusions are irrelevant, "unreliable, speculative, and unsupportive by facts," and (3) Anthony's opinions have no probative value.  (Def.'s Mem. 18–24.)

 Plaintiff argues that the Court should not preclude Anthony's report and testimony because (1) Anthony is qualified, (2) his report and findings are reliable, and (3) Defendant had not demonstrated any prejudice to warrant precluding Anthony's testimony and report.  (*See* Pl.'s Opp'n 21–29.)

## 1.    Qualifications

Defendant argues that Anthony is unqualified because he "lacks the scientific, technical or other specialized knowledge to opine on the liability issues relevant" to Plaintiff's slip-and-fall.  (Def.'s Mem. 19.)  In support, Defendant argues that Anthony has "no training, education, or experience in mechanical engineering, let alone any expertise regarding the mechanical properties of water bottles, conducting root cause failure analysis investigations and analyzing packaging systems, . . . and/or compression failure."  (*Id.*)  Defendant also argues that "[P]laintiff has failed to produce any evidence that Anthony's background or professional experience relates even remotely to root cause failure analysis and/or compression failure."  (Def.'s Reply 9–10 (citing Pl.'s Opp'n 25–26).)

Plaintiff argues that Anthony is qualified because of his "relevant work/industry/teaching and publication experience," including his experience "as a packaging manager for Johnson & Johnson," as a "packaging engineer for Kraft Foods," teaching "at Michigan State University within the School of Packaging," and his written publications on packaging.  (Pl.'s Opp'n 25.)

15

Plaintiff also argues that "[t]his Circuit has adopted a liberal standard for qualifying an expert and there is no requirement that a witness have formal education or training before being qualified as an expert." (*Id.* (quoting *Peerless Ins. Co. v. Marley Engineered Prods. LLC*, No. 05-CV-4848, 2008 WL 7440158, at *2 (E.D.N.Y. June 12, 2008)).)

In some cases, "a district court may properly conclude that witnesses are insufficiently qualified despite the relevance of their testimony because their expertise is too general or too deficient." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997); *see also Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (quoting *Stagl*, 117 F.3d at 81). However, even if a proposed expert lacks such specific training or experience, "he may still have 'practical experience' or 'specialized knowledge' qualifying him to give opinion testimony under Rule 702." *Guerrero v. Loiacono*, 769 F. Supp. 3d 158, 166 (E.D.N.Y. 2024) (quoting *Lickteig*, 589 F. Supp. 3d at 328); *Lickteig*, 589 F. Supp. 3d at 328 (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)); *see also United States v. Simmons*, No. 23-6771, 2025 WL 615459, at *3 (2d Cir. Feb. 26, 2025) ("Rule 702 allows an expert witness to give an opinion based on her . . . 'specialized knowledge . . . .'" (quoting Fed. R. Evid. 702)). In such cases, the court must "'compar[e] the area in which the witness has superior knowledge, skill, experience, or education' with the actual 'subject matter of the witness's testimony.'" *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018) (quoting *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994)); *see also Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, No. 17-CV-6980, 2025 WL 1907206, at *2 (E.D.N.Y. July 10, 2025) (explaining that in order to determine whether the witness is an expert, the court must compare "'the area in which the witness has superior knowledge, skill, experience, or education' and 'the actual subject matter of the witness's testimony'"). "If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the

testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Guerrero*, 769 F. Supp. 3d at 166 (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007)); *Hamraz v. Diversified Maintenance Sys., LLC*, No. 18-CV-1864, 2023 WL 5200282, at *3 (E.D.N.Y. Aug. 14, 2023) (quoting *Zyprexa Prods.*, 489 F. Supp. 2d at 282); *Zyprexa Prods.*, 489 F. Supp. 2d at 282 (citing *Stagl*, 117 F.3d at 80). "Assertions that the witness lacks particular educational or other experiential background, 'go to the weight, not the admissibility, of [the] testimony.'" *Zyprexa Prods.*, 489 F. Supp. 2d at 282 (alteration in original) (quoting *McCullock*, 61 F.3d at 1044); *see also 136 Field Point Circle Holding Co., LLC v. Razinski*, No. 21-CV-11076, 2025 WL 757558, at *14 (S.D.N.Y. Mar. 4, 2025) (quoting *Zyprexa Prods.*, 489 F. Supp. 2d at 282).

Defendant's argument that Anthony "lacks the scientific, technical, or other specialized knowledge to opine on the liability issues relevant to this action" regarding bottled water packaging, (Def.'s Mem. 19), is unpersuasive.  Based on Anthony's significant experience in packaging engineering, the Court finds that Anthony has the "knowledge, skill, experience, training, [and] education" required by Rule 702 to offer opinions in this case relating to the packaging of palletized water bottles and the compression caused by their manner of packaging. Fed. R. Evid. 702; *Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18-CV-10758, 2022 WL 17156550, at *13 (S.D.N.Y. Nov. 22, 2022) (finding that a packaging expert was "sufficiently qualified to offer technical expert testimony" about product dispensers where he was "a packaging engineer with more than [thirty] years of experience in the product packaging sector"); *Santoro ex rel. Santoro v. Donnelly*, 340 F. Supp. 2d 464, 474 (S.D.N.Y. 2004) (finding that a packaging expert was sufficiently qualified to render an expert opinion on the adequacy of warnings for a fireplace heater given his "experience in the fields of packaging and industrial design").

However, Anthony does not appear to have experience or training in shoe design and products.  (*See generally* Anthony CV.)  Because he lacks the qualifications or experience necessary to offer opinions regarding Plaintiff's shoes, the Court excludes Anthony's report and proposed testimony regarding whether Plaintiff's shoes contributed to her fall.  *See Nachimovsky v. Nike, Inc.*, No. 19-CV-2120, 2022 WL 943421, at *4 (E.D.N.Y. Mar. 29, 2022*) (finding a board-certified podiatrist unqualified to offer evidence as an expert regarding "the design of basketball sneakers"), *aff'd*, No. 22-866, 2023 WL 4504461 (2d Cir. July 13, 2023); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016) ("[E]ven if 'a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields.'"), *aff'd*, 720 F. App'x 24 (2d Cir. 2017).

Accordingly, Anthony is qualified to testify relating to bottled water packaging and the compression caused by their manner of packaging.

### 2.    Reliability and relevance

Defendant argues that, even if Anthony is qualified, the Court should preclude Anthony's report and testimony because his opinion is unreliable and irrelevant.  (Def.'s Mem. 20–23.)  First, Defendant argues that "Anthony failed to perform any testing or analysis of any kind" and that "his rudimentary 'measurements' of the unrelated Wellsley Farms water bottles were simply incorrect."  (*Id.* at 20.)  In support, Defendant argues that (i) Anthony's report is based on his visit to a BJ's club other than the club where Plaintiff's accident occurred, (ii) that there is no evidence that the liquid on which Plaintiff slipped came from the palletized water bottle display, and (iii) that his opinion "is based upon an unrelated brand of water bottles, specifically Wellsley Farms as opposed to Poland Spring."  (*Id.* at 20.)  Second, Defendant argues that Anthony's report and findings are unreliable because he "has made no showing whatsoever how his

experience led to his conclusions, why that experience is a sufficient basis for his opinions, how that experience has been reliably applied to the facts or whether he performed any measurements or compression testing of any kind." (*Id.* at 22.) Defendant argues that, in contrast, its liability expert, Dr. Lisa M. Lallo, concluded that "there is no evidence that the source of the subject liquid was from water bottles leaking from compression in the palletized water display" based on her "perform[ing] a site inspection," "conduct[ing] measurement of the floor in the accident location," and conducting "compression testing and analysis on Poland Spring water bottles displayed" at the BJ's club in which Plaintiff fell. (*Id.*) Defendant contends that the findings and conclusions of Dr. Lallo "are further evidence to support the Court's rejection and preclusion of Anthony's opinions and conclusions." (*Id.* at 23.)

Plaintiff first argues that Anthony's findings based on his examination of Wellsley Farms' bottled water are relevant because "the water, bottles, and packing that . . . Anthony examined, were entirely unform across the bottled water industry and therefore made no difference whether the label read 'Wellsley Farms' or 'Poland Spring.'" (Pl.'s Opp'n 27.) Second, Plaintiff argues that the *Daubert* inquiry into the reliability of an expert's methods is "fluid" and that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (*Id.* at 23–24 (citations omitted).) Plaintiff contends that, to the extent that Defendant is seeking to preclude Anthony's findings on the basis that they contradict the findings of Defendant's expert, "it is well settled that '[c]ontentions that assumptions are unfounded go to the weight, not the admissibility of the testimony.'" (Pl.'s Opp'n 24 (quoting *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 423 (S.D.N.Y. 2009)).)

The Court excludes the portions of Anthony's report and proposed testimony addressing whether Plaintiff's injuries were caused by the compression failure of water bottles at BJ's

because they are not "based on sufficient facts or data" and do not "reflect[] a reliable application of the principles and methods to the facts of the case."  Fed. R. Evid. 702; *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 414 (2d Cir. 2023) (affirming district court's exclusion of expert report based on "insufficient data").  As Defendant argues, Anthony's primary basis for concluding that compression failure led to a leak from the palletized water bottles was his analysis of a package of Wellsley Farms water from a different BJ's club.  (Def.'s Mem. 20.)  It is undisputed that Plaintiff fell in front of the Poland Springs water display, and that the Wellsley Farms and Poland Spring waters were displayed separately.  (Pl.'s 56.1 Resp. ¶¶ 10, 77.) Accordingly, Anthony's opinion regarding whether the water in which Plaintiff slipped resulted from compression failure is not reliable or relevant since it is based on his analysis of Wellsley Farms water and his own assertions that the Wellsley Farms water is representative of other water brands.  *See Martinez*, 88 F.4th at 414 (affirming the district court's decision to exclude an expert report where the expert's conclusions were based on "his subjective views on the reasonableness of margins and the unsupported contention 'that the proper comparison for [the defendant's] variable rate is solely the rates of incumbent utilities'"); *Donnelly*, 340 F. Supp. 2d at 475–77 (excluding the expert's opinion regarding the proper location of a warning label on a fire heater, the rationality of touching the heater in the absence of a warning, and proximate cause where the expert "relied only on his general experience of communications" and "did not thoroughly inspect nor . . . independently evaluate the fireplace heater"); *Byrne v. Liquid Asphalt Sys., Inc.*, 238 F. Supp. 2d 491, 495 (E.D.N.Y. 2002) (finding the expert's testimony regarding an asphalt kettle not relevant where, among other things, the expert had "never done any testing on the kettle" and had "never turned on this particular asphalt kettle").  In addition, there is no evidence that the water came from either the Wellsley Farms or Poland Spring bottled waters. (*See* Ward Tr. 44:21–45:8 (explaining that Ward "didn't see water actually running out" from the

stacks); Nesbitt Tr. 45:22–46:16 (explaining that Nesbitt and Tracey "didn't know where [the water] came from")); *Vellali v. Yale Univ.*, No. 16-CV-1345, 2023 WL 4286040, at *1 (D. Conn. June 30, 2023) ("Expert testimony is inadmissible under Rule 702 if it is 'not accompanied by a sufficient factual foundation before it [is] submitted to the jury.'" (alteration in original) (quoting *Boucher*, 73 F.3d at 21)); *see also Est. of Ratcliffe v. Pradera Realty Co.*, No. 05-CV-10272, 2008 WL 53115, at *5 (S.D.N.Y. Jan. 2, 2008) ("Even if an expert alludes to potential defects on a stairway, the plaintiff still must establish that the slip and fall was connected to the supposed defect, absent which summary judgment is appropriate." (citation omitted)).

Because Anthony's "expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero*, 424 F.3d at 253 (quoting *Amorgianos*, 303 F.3d at 266). Accordingly, the Court excludes Anthony's expert opinion concerning the causal relationship between the water condition at BJ's and Plaintiff's slip-and-fall.[17]

---

[17] Although Defendant moves to exclude Anthony's report and proposed testimony in their entirety, the unreliability of Anthony's conclusion as to causation does not justify excluding all parts of his report and proposed testimony. "When faced with expert testimony that contains both reliable and unreliable opinions, district courts often exclude only the unreliable testimony." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 665 (2d Cir. 2016) (collecting cases). "This process of parsing expert testimony is consistent with Rule 702's 'liberal admissibility standards,' which favor allowing the jury to hear testimony that 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* (first quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002); and then quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993))). Anthony's opinion as to causation "can easily be distinguished from testimony that could help the jury," *see id.*, such as his descriptions of bottled water packaging or the general risk of compression in palletized loads, (*see generally* Anthony Rep.). The Court therefore declines to "throw the good out with the bad" by excluding the entirety of Anthony's opinion. *Pfizer*, 819 F.3d at 665 (citation omitted); *Scentsational Techs., LLC v. Pepsi, Inc.*, No. 13-CV-8645, 2018 WL 1889763, at *8 (S.D.N.Y. Apr. 18, 2018) (finding that a food product packaging expert may only opine "as to the technology behind aroma integration in packaging"), *aff'd sub nom. ScentSational Techs. LLC v. PepsiCo, Inc.*, 773 F. App'x 607 (Fed. Cir. 2019).

### 3.    Probative value and prejudice

Defendant argues that the Court should preclude Anthony's testimony under Rule 403 because Anthony's opinions have no probative value and would be prejudicial.  (Def.'s Mem. 23–24.)  In support, Defendant argues that (1) Anthony "did not perform any inspection or investigation of any kind" at BJ's Remsen Avenue location, (2) "his opinions are based upon an unrelated brand of water bottles that were not analyzed or tested in any way," and (3) "he failed to connect his opinions to his experience or even the facts of the case."  (*Id.* at 23.)

Plaintiff argues that the Court should not preclude Anthony's testimony under Rule 403 for several reasons.  (Pl.'s Opp'n 27–29.)  First, Plaintiff argues that "Defendant regurgitates their prior allegations . . . in the context of a 'catch all' Rule 403 argument. . . . ."  (*Id.* at 28.)  Second, Plaintiff argues that although Defendant is "required to demonstrate prejudice," "Defendant merely suggests that there may be jury confusion regarding 'Wellsley Farms brand water bottles' in comparison to 'Poland Spring brand water bottles.'"  (*Id.* at 28–29.)  In support, Plaintiff contends that "[i]t is unclear as to what potential 'confusion' . . . Defendant believes the jury would be subject to" because "Anthony's expert testimony, more than adequately establishes that the water bottles []at issue are an industry standard with respect to size, weight and make up."  (*Id.* at 29.)

A district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . or needlessly presenting cumulative evidence."  *United States v. Martin*, No. 23-7507, 2025 WL 2180611, at *3 (2d Cir. Aug. 1, 2025) (quoting Fed. R. Evid. 403); *United States v. McPartland*, 81 F.4th 101, 114 (2d Cir. 2023) (quoting Fed. R. Evid. 403).  "[D]istrict courts must take care to determine whether there exists any alternative evidence with the same or greater probative value, but with a lesser threat of unfairly prejudicing the defendant, as the proffered evidence."  *NV*

*Petrus SA v. LPG Trading Corp.*, No. 14-CV-3138, 2017 WL 1905820, at *7 (E.D.N.Y. May 8, 2017) (quoting *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 170 (S.D.N.Y. 2006)); *see also United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006) ("Probative value is . . . informed by the availability of alternative means to present similar evidence. Specifically, the Supreme Court has advised that the 'Rule 403 probative value of an item of evidence . . . may be calculated by comparing evidentiary alternatives.'" (quoting *Old Chief v. United States*, 519 U.S. 172, 184 (1997))).

Anthony's report and proposed testimony — specifically, the discussions of the general risks of compression failure in bottled water packaging — is not unduly prejudicial or confusing because knowledge of bottled-water packaging may be probative of the source of the water on which Plaintiff slipped. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) ("[E]xpert testimony must be helpful to the [trier of fact] in comprehending and deciding issues beyond the understanding of a layperson." (quoting *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005))); *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 186 (S.D.N.Y. 2008) (finding that the "the probative value of the [expert's testimony] outweigh[ed] any risk of confusion or prejudice" because "testimony regarding industry practices [was] relevant to the central issues of th[e] case and may prove helpful to the jury"); *see also United States v. Lesniewski*, No. 11-CR-1091, 2013 WL 3776235, at *8 (S.D.N.Y. July 12, 2013) (explaining that "any concerns regarding either prejudice or improper uses of the evidence . . . can be suitably addressed through a limiting jury instruction").

Accordingly, the Court admits only the portions of Anthony's report and proposed testimony discussing the general risks of compression failure in bottled water packaging and excludes the portions regarding the causal relationship between the water condition at BJ's and Plaintiff's slip-and-fall.

23

### c.   Defendant's motion for summary judgment

Defendant argues Plaintiff cannot establish that BJ's created the slip hazard, had actual

notice, or had constructive notice.  (Def.'s Mem. 3–15; Def.'s Reply 1–4.)  The Court addresses

each argument below.

### i.   Creation of the hazard

Defendant argues "[t]here is no evidence in the record to support a finding that BJ's

created the alleged condition," "let alone specific, credible evidence that the condition resulted

from an 'affirmative, deliberate, and intentional' act by a BJ's employee."  (Def.'s Mem. 5.)  In

support, Defendant argues that "[i]t is indisputable that neither plaintiff nor Ward observed any

BJ's employees standing, walking, handling products, working or doing anything at all in or

around the accident location at any time before the accident."  (*Id.* at 5–6.)  Defendant argues

that while Anthony concluded that "the subject liquid was from leaking water bottles under

compression in the [Water Section]," neither Plaintiff nor Ward "observe[d] any packaged cases

of water leaking" and neither of the BJ's employees who responded to the accident were "able to

determine the source" of the water on which Plaintiff fell.  (*Id.* at 6.)  Defendant contends that

even if "the subject liquid came from the Poland Spring water display, which BJ's disputes, the

mere fact that BJ's sold pre-packaged Poland Spring water to customers does not establish the

creation of the condition because the condition is not a direct consequence of BJ's passive

activity of providing guests with water for purchase."  (*Id.* at 7 (citation omitted).)

Plaintiff argues that "there are questions of fact on the issues of whether . . . Defendant

caused or created this condition . . . [and] whether the condition was foreseeable in light of the

weight and materials of the water bottles, which were negligently stacked on the wooden pallet."

(Pl.'s Opp'n 6.)  Plaintiff contends that Anthony's report established that the "the direct and

proximate cause of Plaintiff's slip-and-fall was a wet floor, the water having come from a

24

palletized load of bottled water, that had been damaged by compression," and that the "characteristics of palletized bottled water pose a foreseeable slip-and-fall hazard that should be reflected in BJ's policies concerning merchandizing, storage, and display." (*Id.* at 10–11.)

"In the context of a summary judgment motion, [the] [p]laintiffs' 'burden . . . is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that [the] [d]efendant created the hazardous condition.'" *Strass v. Costco Wholesale Corp.*, No. 14-CV-6924, 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (alteration in original) (quoting *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 319 (E.D.N.Y. 2014)); *see Wang v. Home Depot U.S.A., Inc.*, No. 23-CV-8995, 2025 WL 1582251, at *4 (E.D.N.Y. June 4, 2025) (quoting same); *see also Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (noting that "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 [of the Federal Rules of Civil Procedure] will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim" (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988))).  "To establish that a defendant created a dangerous condition or defect, a plaintiff must point to 'some affirmative act' on the part of the defendant."  *Lyman v. PetSmart, Inc.*, No. 16-CV-4627, 2018 WL 4538908, at *5 (S.D.N.Y. Sept. 21, 2018) (quoting *Vasquez v. United States*, No. 14-CV-1510, 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15, 2016)); *see also Wang*, 2025 WL 1582251, at *4 ("[A] plaintiff must point to some affirmative act on the part of the defendant." (quoting *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-2886, 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017))). "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that [d]efendant created the condition through affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a

defendant may have created a particular hazard." *Marquez v. Wal-Mart Stores E., LP.*, No. 21-CV-5179, 2025 WL 1293293, at *4 (E.D.N.Y. Apr. 18, 2025) (alterations in original) (quoting *Decker*, 2017 WL 568761, at *5).

Plaintiff has not "present[ed] evidence from which a reasonable jury could draw the inference that Defendant created the hazardous condition." *Wang*, 2025 WL 1582251, at *4 (quoting *Lionel*, 44 F. Supp. 3d at 319). It is undisputed that BJ's "did not restock the packaged water on the pallets in any way before the pallets were put out onto the sales floor 'the same way they come in'" to the store, and that BJ's employees "moved the pre-stacked pallets of water onto the sales floor on an overnight basis . . . when the [c]lub was closed for business to customers." (Def.'s 56.1 ¶¶ 76, 115; Pl.'s 56.1 Resp. ¶¶ 76, 115.) The evidence before the Court only establishes that, despite Defendant's customer safety protocols, there was water on the floor in the Water Section, (Def.'s 56.1 ¶¶ 46–47, 77, 82; Pl.'s 56.1 Resp. ¶¶ 46–47, 77, 82), and compression failure may cause leakage in palletized bottled water loads, (Anthony Rep. 4). Plaintiff has not produced evidence of any affirmative act by Defendant in creating a hazardous condition, and the Court therefore declines to infer that Defendant created the water condition merely because it existed. *See Wang*, 2025 WL 1582251, at *5 (finding no genuine dispute of material fact that the defendant created a hazardous condition in part because "[the] [p]laintiffs offer[ed] no affirmative evidence that [the] [d]efendant improperly stacked the tiles" on the pallet); *Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 276 (S.D.N.Y. 2024) (finding that evidence that the defendant "merely permitted a dangerous condition to exist" was not an "affirmative act" (citation omitted)), *aff'd*, No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025); *see also Kortright-Conklin v. Lowe's Home Ctrs., LLC*, No. 21-CV-1305, 2023 WL 5723855, at *10 (N.D.N.Y. Sept. 5, 2023) ("Passive activity does not amount to an affirmative act." (citation omitted)); *McCoy v. TJX Cos., Inc.*, No. 21-CV-4907, 2023 WL 4624499, at *3 (S.D.N.Y. July

19, 2023) ("[A]bsent evidence that [the] [d]efendant stacked the stools, [the] [p]laintiff cannot demonstrate a genuine dispute of material fact that [the] [d]efendant itself created the hazardous condition."); *Yates v. Costco Wholesale Corp.*, No. 19-CV-4023, 2021 WL 9409159, at *6–7 (E.D.N.Y. June 30, 2021) (finding no genuine dispute of material fact as to creation of the hazard because it "remain[ed] equally likely that [the plaintiff] herself or another customer destabilized the stack" where the "yogurt cases were stacked in the morning, before the store opened" and the plaintiff's accident "occurred around 12:45 [P.M.]").

Because Plaintiff has failed to submit any evidence of an affirmative act by Defendant, she has failed to create a genuine dispute of material fact as to whether Defendant created a hazardous condition. *See Wang*, 2025 WL 1582251, at *4 (explaining that "a plaintiff must point to some affirmative act on the part of the defendant" in order to establish that the defendant created the allegedly hazardous condition).

### ii. Actual notice

Defendant argues that there is no evidence that BJ's had actual notice of the liquid condition. (Def.'s Mem. 8–10.) First, Defendant argues that neither Plaintiff nor Ward observed "any liquid, water, fallen products, or debris" in the accident location, spoke with any BJ's employees prior to the accident, observed anyone warn of "something" on the floor where Plaintiff fell, or were aware of any prior complaints or accidents involving liquid on the floor in the accident location. (*Id.* at 8–9.) Second, Defendant argues that BJ's was "[s]imilarly . . . unaware of any prior complaints from anyone or any prior accidents involving liquid on the floor in the accident location." (*Id.* at 9.) Third, Defendant argues that BJ's employees were trained to respond "right away" to spills, that members of BJ's maintenance department monitored the club's floors "for any potential safety hazards, including . . . spills and debris." (*Id.* at 9.) In support, Defendant notes that two of its managers, Perishables Manager Tracey and Bakery

27

Manager Nesbitt, inspected the accident location within thirty and twenty minutes, respectively, and found "no water on the floor," and that "Tracey denied the [water] could have been present for . . . up to five hours prior to [Plaintiff's fall]." (*Id.* at 10.)

Plaintiff argues that she has presented questions of fact to establish that Defendant had actual notice of the water. (Pl.'s Opp'n 13–16.) First, Plaintiff argues that (i) she did not recall seeing any BJ's employees or other customers nearby before her fall, (ii) the "puddle of dirty brown water" she observed near the bottled water display "would not have been brown . . . if it had only recently begun to leak from the . . . water pallet display," and (iii) that Defendant's exhibits "depict water leaking directly under the pallets of water onto the floor." (*Id.* at 13–14.) Second, Plaintiff argues that Tracey's deposition testimony presents factual questions on actual notice. (*Id.* at 14–15.) In support, Plaintiff argues that Tracey (i) could not recall specifics regarding the BJ's maintenance staff in 2020, (ii) testified that the practice of performing hourly walkthroughs began in 2023, and (iii) acknowledged that "caution signs were put up after the accident" because "the spill was not detected in time." (*Id.*) Plaintiff also argues that Tracey's responsibilities did not include the Water Section, so it "is unclear how [he] could speak to inspecting this area prior to the accident." (*Id.* at 15.) Third, Plaintiff argues that Nesbitt's deposition testimony presents factual questions about actual notice because (i) Nesbitt's hourly walkthroughs of BJ's club "were not logged by [her]," (ii) she did not inspect the water pallets directly, (iii) she did not know the source of the water and did not investigate further after Plaintiff's fall, and (iv) she indicated that the cause of Plaintiff's accident was "housekeeping—slippery floors." (*Id.*)

"Actual notice requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition." *Albright v. Target Corp.*, No. 21-CV-4811, 2023 WL 3997381, at *1 (E.D.N.Y. June 13, 2023) (quoting *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332

(E.D.N.Y. 1998)); *see also Smith v. Target Corp.*, No. 23-CV-810, 2025 WL 2062573, at *2

(W.D.N.Y. July 23, 2025) (quoting *Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 504

(S.D.N.Y. 2008)) (similar); *Strass*, 2016 WL 3448578, at *4 ("To show actual notice, the

plaintiff must 'prove that the defendants were, in fact, aware of the dangerous condition.'"

(quoting *Quarles*, 997 F. Supp. at 332)); *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x

10, 12 (2d Cir. 2015) ("Actual notice requires that a defendant receive complaints or similarly be

alerted to the existence of the dangerous condition.").

Plaintiff offers no evidence that Defendant or its employees were aware that water was on

the floor in the bottled water display area prior to Plaintiff's accident, and does not point to any

evidence that Defendant received complaints about water on the floor in the Water Section prior

to her accident.  It is undisputed that there were no caution signs in the accident location prior to

Plaintiff's fall because BJ's was "unaware of the spill situation."  (Def.'s 56.1 ¶ 152; Pl.'s 56.1

Resp. ¶¶ 152.)  In addition, neither Ward nor Plaintiff saw the water on the floor prior to

Plaintiff's fall, (Def.'s 56.1 ¶¶ 13–14, 20, 22, 23; Pl.'s 56.1 Resp. ¶¶ 13–14, 20, 22, 23), and

there is no evidence in the record that an accident report had ever been filed regarding water in

the Water Section prior to Plaintiff's accident, (Def.'s 56.1 ¶¶ 66–71, 154–55; Pl.'s 56.1 Resp.

¶¶ 66–71, 154–55).  Accordingly, Plaintiff has failed to show that Defendant had actual notice of

a hazardous condition.  *See Wang*, 2025 WL 1582251, at *6 ("Because there is no evidence that

[the] [d]efendant was actually aware of a defect, [the] [p]laintiffs fail to show that [the]

[d]efendant had actual notice." (citations omitted)); *Leandro v. Wal-Mart Supercenter Store

#2104*, No. 19-CV-2108, 2021 WL 2742622, at *8 (S.D.N.Y. June 30, 2021) (granting summary

judgment to the defendants where there was "no evidence that [the] [d]efendants were aware of

the dangerous condition before the accident"); *Strass*, 2016 WL 3448578, at *4 (granting

summary judgment where "[a]side from conclusory references to 'actual notice,' [p]laintiffs

d[id] not identify any evidence that would support a finding that [the defendant] was, in fact, aware of the condition that allegedly caused [the plaintiff's] fall").[18]

### iii.    Constructive notice

Defendant argues that BJ's did not have constructive notice of the water condition.  First, Defendant argues that the condition was not visible or apparent because (i) Plaintiff and Ward "did not know the amount of time the liquid condition was on the floor" before Plaintiff fell and Plaintiff has only provided "mere speculation, as to how the liquid got on the floor," and (ii) there were no indications of a recent spill.  (Def.'s Mem. 12–13.)  In support, Defendant argues that (i) Plaintiff and Tracey "did not see any footprints or shopping cart marks of any kind in or through the liquid in the accident location," (ii) Ward, Nesbitt, and Tracey "described the alleged liquid condition as clear," (ii) "photographs depicting the accident location . . . refute [P]laintiff's description of the liquid on the floor," and (iv) the "oxygen tanks, pieces of plastic, or paper shown in the photographs . . . were not on the floor at any time before [Plaintiff's] accident."  (*Id.*)  Second, Defendant argues that the water was not on the floor for a sufficient length of time.  (*Id.* at 14–15.)  In support, Defendant argues that "Plaintiff has no evidence to refute that the accident location was clean and free of liquid [thirty] minutes and, again, [twenty] minutes before the incident when BJ's Perishables Manager, Tracey, and Bakery Manager, Nesbitt, performed their respective last known inspections of the accident location" because twenty

---

[18] Plaintiff relies on *Pearce v. Home Depot U.S.A., Inc.* to argue that Court should find that Defendant's "failure to preserve any video actually depicting the accident will make it impossible to determine how long the substance was on the floor surrounding the pallet of water."  (Pl.'s Opp'n 21 (citing *Pearce v. Home Depot U.S.A., Inc.*, No. 14-CV-6836, 2016 WL 4540832 (S.D.N.Y. Aug. 30, 2016)).)  However, Plaintiff's reliance on *Pearce* is inapposite. Unlike in *Pearce* where the "[d]efendant destroyed key evidence" relevant to the case, *Pearce*, 2016 WL 4540832, at *2, Defendant has supplied available video footage from the date of Plaintiff's accident, (*See* Video; *see also* Def.'s 56.1 ¶ 156; Pl.'s 56.1 Resp. ¶ 156; Tracey Tr. 42:19–43:23 (explaining that a BJ's manager reviews and saves available video when an accident occurs on BJ's property and the footage goes into the accident report)).

minutes is an insufficient amount of time to establish constructive notice. (*Id.* at 14.) Third, Defendant argues that Anthony's "baseless, unsupported, and purely speculative conclusion regarding how [the water] came to be [on the floor] in the first instance" is insufficient for Plaintiff to establish constructive notice. (*Id.* at 15.)

Plaintiff argues that the Court should find that Defendant had constructive notice of the water condition for the same reasons as it argues that Defendant had actual notice of the water condition. (Pl.'s Opp'n 13–16.) In addition, Plaintiff argues that "where there is evidence that showed that the area of the accident was under constant supervision . . . an issue of fact as to whether the condition existed for a sufficient length of time exist[s]." (Pl.'s Opp'n 21 (citation omitted).)

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the] defendant's employees to discover and remedy it." *McCoy v. TJX Companies, Inc.*, No. 23-1159, 2024 WL 4212194, at *1 (2d Cir. Sept. 17, 2024) (quoting *Hartley v. Waldbaum, Inc.*, 893 N.Y.S.2d 272, 273 (Sup. Ct. 2010)); *Nussbaum*, 603 F. App'x at 12 ("To prove liability based on constructive notice, the danger must have been 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it.'" (quoting *Lemonda v. Sutton*, 702 N.Y.S.2d 275, 276 (App. Div. 2000))); *see also id.* at 12–13 (affirming a district court's grant of summary judgment without reaching the question of whether the hazard existed for a sufficient length of time because the hazard was determined not to be visible and apparent); *Lionel*, 44 F. Supp. 3d at 323–24 (granting summary judgment where the plaintiff could only prove that plastic lid was visible and apparent, but could not prove that it existed for a sufficient length of time); *Kirbaran*, 720 F. Supp. 3d at 277 ("Courts routinely find no material issue of fact as to constructive notice where . . . a slip-and-fall plaintiff describes the substance on which

she fell, but 'provides no guidance regarding its duration on the floor.'" (quoting *Gisser v. Wal-Mart Stores East, LP*, No. 17-CV-5293, 2018 WL 6493101, at *5 (S.D.N.Y. Dec. 7, 2018))).

The plaintiff's burden at this stage of the proceedings is not merely to proffer a plausible theory, but to present evidence from which a reasonable jury could draw the inference that the defect was both visible and apparent and that it existed for a sufficient length of time prior to the accident. *See McCoy*, 2024 WL 4212194, at *1 (finding that the defendant lacked constructive notice in part because the plaintiff "presented no evidence rebutting [the defendant's] testimony"); *Tenay*, 281 F. App'x at 13 (holding that "the district court did not err in relying on [the plaintiff's] failure to adduce evidence regarding the elements of his [negligence] claim in granting [summary judgment]"); *Yahya v. United States*, No. 21-CV-375, 2024 WL 4894791, at *6–7 (W.D.N.Y. Nov. 25, 2024) (denying the defendant's summary judgment motion because of the plaintiff's testimony that "the ice was visible because there was snow 'everywhere' at the time of his fall and because he saw snow or ice before he slipped and fell," "coupled with the proffered expert report" and "lack of evidence of a pre-fall inspection of the premises" created a genuine issue of material fact as to the defendant's constructive notice). A plaintiff cannot simply prove that the defendant was "generally aware of the existence of the dangerous condition," but must prove that the defendant had "notice of the 'particular condition' at issue." *Dondero v. Chopra & Nocerino LLP*, No. 21-1487, 2022 WL 320967, at *2 (2d Cir. Feb. 3, 2022) (quoting *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997)); *Kortright-Conklin*, 2023 WL 5723855, at *12 ("In constructive notice cases, the plaintiff must prove not simply that the defendant was generally aware of the existence of the dangerous condition, but that the defendant had notice of the particular condition at issue." (quoting *Taylor*, 121 F.3d at 90)).

Plaintiff fails to offer any evidence that the alleged hazardous condition was "visible and apparent" and existed "for a sufficient length of time prior to the accident" to permit Defendant

"to discover and remedy it."  *See McCoy*, 2024 WL 4212194, at *1; *Nussbaum*, 603 F. App'x at 12.  Plaintiff and Ward testified that they did not see water or debris of any kind on the floor before Plaintiff's accident.  (McFee Tr. 25:23–26:19; Ward. Tr. 15:22–17:3.)  In addition, according to Ward, Nesbitt, and photographs taken after Plaintiffs fall, the water was "clear." (Ward Stmt.; Nesbitt Tr. 39:6–9; Post-Accident Photograph; Post-Emergency Medical Services Photographs; *see also* Ward Tr. 53:14–54:9; Tracey Tr. 36:23–37:21 (stating that he reviewed photographs of what Plaintiff slipped on and "it looked like water"); Pl.'s 56.1 Resp. ¶¶ 65, 95, 141.)  In addition, neither Plaintiff nor Tracey saw any shopping cart marks in the water after Plaintiff's fall, (McFee Tr. 43:19–21; Tracey Tr. 71:22–72:3), and Plaintiff has not provided any evidence regarding how long the water was present on the floor.  Without evidence of visibility of the water or the length of time it was present, Plaintiff cannot create an issue of fact as to whether Defendant's employees should have discovered the water spill and remedied it.  *See McCoy*, 2024 WL 4212194, at *2 (explaining that the defendant lacked constructive notice of stacked stools because "[the plaintiff] did not know when or by whom the stools had been stacked," did not see "[the defendant's] employees stocking merchandise in the area before or after the accident," and "[the plaintiff] presented no evidence rebutting [the defendant's] testimony that the stools remained unstacked only [fifteen] to [twenty] minutes before the incident"); *Kirbaran*, 720 F. Supp. 3d at 278–79 (granting summary judgment where the plaintiff had not proffered "any evidence" indicating how long the hazard was present prior to her accident or that a reasonable inspection would have uncovered its existence); *Lyman*, 2018 WL 4538908, at *8 (finding that, in general, "about [twenty-five] to [thirty] minutes before [p]laintiff fell . . . is insufficient to find that a defendant had constructive notice of the dangerous condition"); *Diaz v. Target Corp.*, No. 15-CV-5731, 2017 WL 4358754, at *4 (E.D.N.Y. Sept. 21, 2017) ("'Mere speculation' about how the water came to be dirty . . . is insufficient to

demonstrate that the water in which [the plaintiff] slipped 'was visible and apparent for a sufficient length of time to be discovered and remedied.'" (citation omitted)); *Strass*, 2016 WL 3448578, at *5 (finding no dispute of material fact where "the record [was] devoid of any evidence establishing the amount of time the liquid was on the floor prior to [the plaintiff's] fall").

Further, even assuming BJ's should have been aware of the risk of compression failure in palletized water displays, "a 'general awareness' that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition that caused [P]laintiff's fall." *Tenay*, 281 F. App'x at 14 (quoting *Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969 (1994)); *see also Goodnough v. Clark*, No. 15-CV-648, 2017 WL 4326060, at *9 (N.D.N.Y. Sept. 27, 2017) (finding that a defendant's statement that the steps where plaintiff fell "are so old" was "insufficient to create a genuine dispute of material fact . . . because a 'general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition'"); *Diaz*, 2017 WL 4358754, at *2 ("A 'general awareness' that a dangerous condition 'may be present' is legally insufficient to charge defendant with constructive notice of the specific condition that caused plaintiff's injuries." (quoting *Silverman v. United States*, No. 04-CV-5647, 2008 WL 1827920 at *14 (E.D.N.Y. Mar. 28, 2008))). Because Plaintiff has "offered neither any evidence that the wet area was visible or apparent, nor any evidence suggesting how long the condition had existed prior to [her] fall," she has failed to demonstrate that Defendant had constructive notice of the water spill. *Tenay*, 281 F. App'x at 14.[19]

---

[19] In her opposition, Plaintiff notes that Defendant maintained "no particular logs . . . for cleaning or hazard inspection in August [of] 2020," (Pl.'s Opp'n 14), but Plaintiff's emphasis on the absence of Defendant's logs is misplaced. Because Plaintiff's claim is being adjudicated in federal court, Defendant has no *prima facie* burden to offer evidence as to when the water

Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's negligence claim.

**III.    Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to exclude the expert report and testimony of Plaintiff's liability expert and grants Defendant's motion for summary judgment.

Dated:  August 25, 2025
        Brooklyn, New York

SO ORDERED:


_____
s/ MKB
MARGO K. BRODIE
United States District Judge

---

display area was last cleaned or inspected relative to the time when Plaintiff was injured.  *See Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 275 (S.D.N.Y. 2024) (explaining that New York law, which provides that it is a defendant's burden to "show[] that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence," "has no application [in federal court] in determining [the] burden of proof"); *Larduotsos v. Lowe's Home Improvement*, No. 21-CV-741, 2023 WL 6385721, at *3 n.4 (E.D.N.Y. Sept. 29, 2023) ("Because the federal burden of proof applies, [the] [p]laintiff had the burden to produce evidence that [the defendant] had actual or constructive notice of the alleged defect."); *Leandro v. Wal-Mart Supercenter Store #2104*, No. 19-CV-2108, 2021 WL 2742622, at *8 (S.D.N.Y. June 30, 2021) (finding no constructive notice where "[p]laintiff offer[ed] no evidence regarding when the spill took place"); *Casierra v. Target Corp.*, No. 09-CV-1301, 2010 WL 2793778, at *3 (E.D.N.Y. July 12, 2010) (granting the defendant summary judgment on constructive notice where there was "simply no evidence . . . as to how long" the spilled lotion was on the floor).